WILLIAM J. SCHROEDER, ISB No. 6674
GREGORY C. HESLER, ISB No. 8667
PAINE HAMBLEN LLP
717 West Sprague Avenue, Suite 1200
Spokane, Washington 99201-3505
Telephone: (509) 455-6000
Facsimile: (509) 838-0007
william.schroeder@painehamblen.com
greg.hesler@painehamblen.com

The Honorable Ronald E. Bush

Attorneys for Defendant/Third Party Plaintiff
Avista Corporation, d/b/a Avista Utilities

IN THE UNITED STATES DISTRICT COURT
OF THE STATE OF IDAHO, NORTHERN DIVISION

| | |
|---|---|
| WILLIAM J. EVANS, individually and d/b/a WJ ENTERPRISES and MELONY EVANS, <br><br> Plaintiffs, <br><br> vs. <br><br> AVISTA CORPORATION d/b/a AVISTA UTILITIES, INC., <br><br> Defendant. | Cause No. 2:10-CV-473 - REB <br><br> **DEFENDANT AVISTA CORPORATION'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION** |
| AVISTA CORPORATION, d/b/a AVISTA UTILITIES, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> KEN ELA, individually, and MID-MOUNTAIN LAND & TIMBER, INC., <br><br> Third-Party Defendants. | |

DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 1

## I. INTRODUCTION

This matter comes before the Court on the Motion of Plaintiffs William J. Evans, Melony Evans and WJ Enterprises (collectively the "Evans"), seeking application of the doctrine of spoliation against Defendant Avista Corporation, d/b/a Avista Utilities ("Avista"). The Motion is not addressed to evidence collected from the fire that occurred at the Evans' Building (11999 North Reed Road, Hayden, Idaho) on January 2, 2009. Rather, it is directed to evidence regarding a fire that occurred the prior year at 11889 Tracey Road (the "Tracey Road Fire").

As discussed below, more than three years after the Tracey Road Fire, and nearly 2 1/2 years after details concerning the fire were produced to Plaintiffs, Avista inadvertently disposed of the gas meter involved in the incident. The meter had previously been inspected by State and local fire personnel, as well as by Farmers Insurance Company—an entity that, by virtue of its subrogated interest in the Evans' claimed damages, is a putative Plaintiff in these proceedings. The disposal of the meter did not involve consideration of any strategic advantage in this case, but rather was the product by an unrelated Avista employee's effort to prepare for a scheduled relocation of Avista's evidence locker to a smaller building.

Significantly, Avista has already conceded that, regardless of the actual cause, it operated on the assumption that the Tracey Road Fire was a result of snow falling from the roof of the building and damaging the meter. Thus, for purposes of assessing Avista's potential liability in this action, the cause of the Tracey Road Fire is not materially at issue. Nonetheless, Plaintiffs claim that they have been prejudiced by the loss of the ability to inspect the Tracey Road meter because it has impeded their ability to establish the cause of that fire. Under the circumstances, Avista submits that Plaintiffs' allegation of prejudice is illusory, and that Avista, which has

actively cooperated in the exchange of information throughout the case, should not be sanctioned for its inadvertent disposal of the Tracy Road meter.

For these reasons, Avista requests that the Court deny Plaintiffs' request for sanctions, and that it decline to apply the doctrine of spoliation under the circumstance of this case.

## II. STATEMENT OF FACTS

### A. The Winter of 2007/2008

As Plaintiffs note, in the winter of 2007/2008, northern Idaho experienced heavy snowfall, which created several incidents at the Warren K. Industrial Park involving snow-load damage to gas meters. (*See, e.g.*, Memorandum in Support of Plaintiffs' Motion for Sanctions Due to Spoliation Against Defendant Avista Corporation (Docket No. 58-1), filed February 21, 2012 ("Plaintiff Mem."), at p. 2; *see, also*, Third-Party Plaintiff Avista Corporation's Statement of Disputed Facts in Response to Third-Party Defendant Mid-Mountain Land & Timber, Inc.'s Motion for Summary Judgment (Docket No. 45), filed October 24, 2011 ("Avista SOF"), No. 22) The causes of several of these incidents remain the subject of dispute. However, for purposes of assessing Avista's liability in this action, the cause of the Tracey Road Fire is not materially at issue.

The Tracey Road Fire was a gas-involved structure fire that occurred at 11889 Tracey Road on the afternoon of February 24, 2008. (*See, e.g.*, Northern Lakes Fire Protection District Fire Report, att'd to the Declaration of Counsel in Opposition to Plaintiffs' Motion for Sanctions Due to Spoliation ("Decl. of Counsel"), as Exhibit 1; *see, also*, Idaho State Fire Marshal Report of Investigation, att'd to the Decl. of Counsel as Exhibit 2)

After investigation, the Northern Lakes Fire Protection District and the Idaho State Fire Marshal suggested that the fire was accidental. (Ibid.) Conversely, the Developer of the

Warren K. Industrial Park, Ken Ela ("Ela"), has offered that the fire was arson. (*See*, 30(b)(6) Deposition of Mid-Mountain Land & Timber Testimony of: Kenneth Ela, taken August 25, 2011 ("Dep. of Ela"), att'd to the Decl. of Counsel as Exhibit 3, at p. 73 *ll* 12-24) In either event, for its purposes, Avista operated on the assumption that the Tracey Road Fire was the result of snow falling from the roof of the building and damaging the gas meter. (*See*, Deposition of Mike Daniels, taken October 24, 2011 ("Dep. of Daniels"), att'd to the Decl. of Counsel as Exhibit 4, at pp. 17 *ll* 24-25; 18 *ll* 1-25; 19 *ll* 21-25; 20 *ll* 1-12; 21 *ll* 5-25; 22 *ll* 1-5) Based on that assumption, in the spring and summer of 2008, Avista employee Dianne Best was directed to work with Ela to inspect each building within the Warren K. Industrial Park to confirm that some method of protecting the gas meter from snow accumulation had been implemented. (Ibid., *see, also*, Avista SOF No. 23) Thus, regardless of the actual cause of the fire, Avista treated it as the product of snow-load damage and reacted accordingly.

B. **Preservation and Inspection of the Tracey Road Meter**

Following the Tracey Road Fire, the gas meter from the building was secured and brought to Avista's Coeur d'Alene offices, where it was temporarily stored. (*See*, Plaintiffs' Second Interrogatories and Requests for Production to Defendant Avista Corporation, d/b/a Avista Utilities, Inc. [and Answers Thereto], ("Plaintiffs' Second Discovery"), att'd to the Decl. of Counsel as Exhibit 5, Answer to Interrogatory No. 1) It was held at that location until February 29, 2008, at which time it was physically inspected by Idaho Fire Marshal, Mark Aamodt, Northern Lakes Fire Protection District employee, Ralph Kramer, and, on behalf of

Farmers Insurance ("Farmers"), Charles McCall of Unified Investigations & Sciences.[1] (Ibid.) Thereafter, the meter was transferred and logged into Avista's evidence locker in Spokane, Washington by the Claims Specialist assigned to the incident, Dawn Donahoo. (Ibid.; see, also, Claims Department Evidence Log (redacted), att'd to the Decl. of Counsel as Exhibit 6, at p. 1)

C. **The Evans Fire**

As detailed in prior briefing to the Court, between December 12, 2008 and January 5, 2009, northern Idaho experienced more than 77 inches, or close to 6 1/2 feet, of accumulated snowfall. (Avista SOF Nos. 33-34) Although Plaintiffs dispute the severity of the conditions, Avista contends that it was one of the worst winter storms in recorded history, causing roofs and buildings to collapse, limiting traffic to emergency travel, and prompting both State and Presidential disaster declarations.[2] (Ibid.)

In the midst of this natural disaster, the fire to the Evans' Building occurred.

D. **Investigation and Discovery**

Following the Evans' fire, Farmers, on behalf of itself and the Evans, commenced an investigation. As it had with the Tracey Road Fire, Avista cooperated with that investigation in all material respects. For example, as early as January 30, 2009—just a few weeks after the incident—Avista hosted a joint expert inspection of the gas meter from the Evans' Building. (See, Decl. of Counsel, ¶ 8) That inspection was attended by no less than four fire investigators

---

[1] Notably, the Evan's Building was also insured by Farmers, and at least a portion of the amounts sought in this action represent Farmers' subrogated interest. Presumably, therefore, Farmers already has access to whatever conclusions Unified Investigations & Sciences reached with respect to its inspection of the meter.

[2] While both winters were severe, it is Avista's position that the winter of 2008/2009 presented a unique and unforeseeable set of dangers, most notably the development of large snow cornices on the eaves of buildings within the Warren K. Industrial Park. (See, e.g., Defendant Avista Corporation's Response to Plaintiffs' Motion to Amend Their Complaint to Add a Prayer for Punitive Damages (Docket No. 54), filed December 12, 2011 ("Resp. to Mot. to Amend"), at pp. 5-8)

DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 5

on behalf of Farmers, including a representative of Unified Investigations—the same entity that had previously examined the meter from the Tracey Road Fire. (*See, e.g.*, Log-in Sheet, January 30, 2009 Evidence Inspection, att'd to the Decl. of Counsel as Exhibit 7) Likewise, Avista actively cooperated with all of Plaintiffs' pre-litigation requests for documents and information, including all requests concerning the Tracey Road Fire. For example, as early as March 27, 2009, Avista had produced all dispatch and response records in its possession concerning the Tracey Road Fire. (*See*, March 27, 2009 correspondence to Plaintiffs' counsel, att'd to the Decl. of Counsel as Exhibit 8) Nonetheless, for nearly 2 1/2 years after production of that information, and despite voluminous discovery between the parties, no request to re-inspect the meter from the Tracey Road Fire was received by Avista.[3]

E. **Plaintiffs' Inquiry Concerning the Meter**

As Plaintiffs note, in late July 2011, the subject of the gas meter from the Tracey Road Fire briefly came up during the deposition of Avista employee William Baker. (*See*, Plaintiff Mem., at p. 4) Thereafter, on August 15, 2011, Plaintiffs' counsel formally requested that Avista identify whether it still had the meter in its possession, and that it produce photographs of the same so that a determination could be made as to whether an inspection would be requested. (*See*, August 15, 2011 e-mail correspondence from Megan McFarland to Greg Hesler, att'd to the Decl. of Counsel as Exhibit 9) The following day, Plaintiffs' request was communicated to the Claims Specialist assigned to this matter, Linda Clifton. (Decl. of Counsel, ¶ 10) However, because Ms. Clifton was on vacation, she was unable to immediately follow up on the request. (Ibid.)

---

[3] Discovery has included depositions of approximately nine Avista employees, production of nearly 4,000 pages of documents by Avista, and responses by Avista to multiple requests for information.

DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 6

F.   **Disposal of the Meter**

Unfortunately, during the same period of time, Avista's Facilities Department was in a process of renovation that necessitated the relocation of its evidence locker to a smaller building. (*See*, Plaintiffs' Second Discovery (Decl. of Counsel, Exhibit 5), Answer to Interrogatory No. 1) To facilitate this request, Ms. Donahoo, who was neither aware of Plaintiffs' request for the Tracey Road meter nor its potential relevance to this litigation, disposed of evidence relating to claims that (a) she had been assigned to; and (b) for which the applicable statute of limitation had run. (Ibid.) This involved the disposal of a variety of evidence, including the meter from the Tracey Road Fire. (Ibid.; *see*, *also*, Evidence Log (Decl. of Counsel, Exhibit 6))

As Ms. Donahoo explained in her subsequent deposition, while she intended to dispose of the meter, she had no intent to dispose of or spoliate any evidence that might be relevant to an ongoing dispute:

> Q. With respect to the meter at Tracey, you mentioned that you intentionally destroyed it, and I think I understand that you didn't throw it away by accident.
>
> A. Correct.
>
> Q. But did you intend to dispose of evidence that was potentially relevant to ongoing litigation?
>
> A. No.

(*See*, Deposition of Dawn Donahoo, taken October 24, 2011 ("Dep. of Donahoo"), att'd to the Decl. of Counsel as Exhibit 10, at p. 41 *ll* 11-17) Further, upon learning that the meter had been disposed of, Avista promptly and fully disclosed both the circumstances and timing of the same to all parties. (*See*, Decl. of Counsel, ¶ 11)  Avista likewise provided timely responses to Plaintiffs' discovery requests regarding the issue and made Ms. Donahoo available for a

deposition concerning her disposal of the meter. In each of these respects, Avista attempted to mitigate the potential impact of its inadvertent disposal of the meter.[4]

### III. ARGUMENT

Under Ninth Circuit precedent, this Court is vested with discretionary authority to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence. *See,* Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc., 306 F.3d 806, 824 (9th Cir. 2002). As a discretionary power, the Court's determination in this context is generally reviewed for abuse of discretion. Unigard Sec. Ins. v. Lakewood Eng'g & Mfg., 982 F.2d 363, 369 (9th Cir. 1992).

In exercising its discretionary authority, the Court is empowered to exclude spoliated evidence, or alternatively, to instruct the trier-of-fact to infer that the spoliated evidence would have been unfavorable to the responsible party. *See, e.g.,* Unigard, 982 F.2d at 368; Med Lab Mgmt., 306 F.3d at 824. Evidence of bad faith is not required. *See,* Unigard, 982 F.2d at 368 n.2; Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). However, willfulness or fault is generally required for the exclusion of evidence unless an adverse instruction would be insufficient to cure the prejudice to the opposing party. *See,* Unigard, 982 F.2d at 368 n.2, 369. Further, in all cases application of the doctrine must be consistent with its underlying rationales, which have been described by the Ninth Circuit as follows:

> . . . The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . .

---

[4] Notably, Plaintiffs did not attempt to depose, or subpoena records from, Idaho Fire Marshal Mark Aamodt or Northern Lakes Fire Protection District employee Ralph Kramer, both of whom cooperated with Farmers' own experts in examining the meter shortly after the Tracey Road Fire.

DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 8

> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991), *citing* Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir. 1982).

The Ninth Circuit's decision in Medical Laboratory Management Consulants v. American Broadcasting Companies, Inc., 306 F.3d 806 (9th Cir. 2002), is also instructive. In that case, ABC aired an investigative news program which reflected negatively on Medical Laboratory Management Consultants ("Medical Lab"), prompting the latter to file suit on a variety of theories. Med Lab Mgmt., 306 F.3d at 824-25. At some point following the airing of the news program, ABC lost pivotal evidence it had relied on in airing the program. Ibid. Despite its subsequent efforts to recover the evidence, it was unable to do so. Ibid. Consequently, Medical Lab attempted to invoke the doctrine of spoliation. Under the circumstances, however, both the trial court and the Ninth Circuit Court of Appeals declined to apply the doctrine. As the Court of Appeals explained:

> . . . When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected. *See* Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996). The district court did not abuse its discretion by concluding that, under the totality of the circumstances, an unfavorable inference was not warranted because a rational jury would not infer that Defendants' loss of the [evidence] indicated that [it] threatened Defendants' legal position and needed to be covered up. *See* Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (the district court did not abuse its discretion in refusing an unfavorable inference when the circumstances indicated that the evidence was not intentionally lost and the responsible party search for it, but to no avail); Latimore v. Citibank Fed. Sav. Bank, 151 F.3d 712, 716 (7th Cir. 1998) (the inference that a missing record contained adverse evidence was not justified when the record's loss was inadvertent); *see also* Akiona, 938 F.2d at 161 (noting that "a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy the [evidence] is more likely to have been threatened by the [evidence] than is a party in the same position who does not destroy the [evidence]," and that the adverse inference is based upon evidentiary and

deterrence rationales) (quoting Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988)).

The availability of other evidence to Medical Lab to challenge the broadcast's statement regarding the [missing evidence], and Medical Lab's failure to pursue this evidence, also formed proper bases for the district court's exercise of its discretion. When a proponent cannot produce original evidence of a fact because of the inadvertent loss of the evidence, proof by secondary evidence is permissible. *See* Fed.R.Evid. 1004(1).

Ibid.

Here, as in Med Lab Mgmt., the circumstances of this case do not support application of the spoliation doctrine. This is true for at least the following reasons:

1. *The Circumstances Do Not Warrant a Conclusion that the Gas Meter at Issue Would have Been Unfavorable to Avista*

As a preliminary matter, there is no reason to believe that Avista's disposal of the Tracey Road gas meter was motivated by concern for its possible evidentiary implications. As Ms. Donahoo has explained, her motivations in disposing of the meter were unrelated to any consideration of possible strategic advantage related to this case.[5] Rather, her only consideration was to facilitate the transition of Avista's evidence locker from its existing facility to a smaller building. Such facts do not warrant a conclusion that the evidence, if retained, would have been unfavorable to Avista, nor that Avista acted with the intent to prevent such evidence from coming to light. To wit—Avista had previously made the meter available for a full inspection by the Northern Lakes Fire Protection District, the Idaho State Fire Marshal, and Farmers—which, by virtue of its subrogated interest, is a putative Plaintiff in these proceedings. As such, the

---

[5] Had Ms. Donahoo acted with malicious intent, it is far more likely that she would have disposed of the meter shortly after the Tracey Road Fire occurred, so as to prevent the evidence from surfacing in connection with potential claims from that incident, rather than to wait more than three years before doing so.

**DEFENDANT AVISTA CORPORATION'S**
**RESPONSE TO PLAINTIFF'S MOTION FOR**
**SANCTIONS DUE TO SPOLIATION - 10**

evidentiary rationale behind the doctrine of spoliation does not support its application to the present case.

### 2. *The Circumstances Do Not Warrant Deterrent or Punitive Sanctions*

The punitive/deterrent rationale is similarly inapplicable. There is no evidence that, at any point in this litigation, Avista has acted evasively or inappropriately with respect to the discovery of potentially relevant information. To the contrary, within 30 days of the fire at the Evans' Building, Avista had cooperated with the Evans and Farmers to allow for a detailed expert inspection of the gas meter from their building. In the ensuing months, Avista fully cooperated with Plaintiffs on the informal exchange of information and, as early as March 27, 2009, produced the dispatch and response records concerning the Tracey Road Fire, as well as a variety of other requested documents and information. Likewise, since the commencement of litigation, Avista has faithfully and diligently discharged its discovery obligations, timely producing nearly 4,000 pages of discoverable documents, facilitating approximately nine depositions of Avista employees, and responding to a multitude of other detailed requests for information. This effort, combined with the inadvertent nature of Ms. Donahoo's actions, refute any potential need for sanctions as a punishment or deterrent as to Avista. Thus, as in Med Lab Mgmt., the punitive/deterrent rationale for the doctrine of spoliation is also inapplicable.

### 3. *Plaintiffs Have Not Been Prejudiced by the Disposal of the Gas Meter from Tracey Road*

Also significant is the fact that Plaintiffs have not been materially prejudiced by Avista's inadvertent disposal of the gas meter at issue. In this respect, Plaintiffs contend that, because of snow damaged meters from the previous winter, Avista knew or should have known of the possibility of similar events occurring in the future, and should have acted to prevent them from

happening. (*See*, Plaintiff Mem., at p. 8)  Thus, according to Plaintiffs, by preventing them from introducing evidence that the Tracey Road Fire was the result of snow falling onto the gas meter, they have been prejudiced. (Ibid.)

This contention, however, ignores the evidence and testimony to date.  As discussed above, while there may be room for speculation as to the actual cause of the Tracey Road Fire, it is undisputed that Avista treated the incident as being the product of snow-load damage to its meter.  That is, from an operational standpoint, Avista assumed that the fire was the product of snow falling from the roof of the building, and it was in response to this assumption that Avista directed Dianne Best to work with Ela in surveying the buildings in the Warren K. Industrial Park to confirm that they had adequate snow protection.

Under these circumstances, Plaintiffs' principal request for relief in this motion—a finding that the cause of the Tracey Road Fire was snow falling from the roof—is effectively moot.  For purposes of determining Avista's liability in this action, it is undisputed that, regardless of the actual cause, Avista treated the Tracey Road Fire as being the product of snow-load damage.  Likewise, this undisputed fact renders Plaintiff's secondary request for relief—an instruction that the evidence would have been unfavorable to Avista—unnecessary, cumulative and unfairly prejudicial.  Had Avista retained the meter, the most it could have revealed is that the meter was potentially damaged by snow, either before or during the fire.  Again, however, Avista has already acknowledged that, from an operational standpoint, it assumed the fire was the product of snow-load damage, rendering additional evidence regarding the meter both cumulative and unnecessary.

4. *Alternative Sources of Evidence Concerning the Cause of the Fire are Available*

Finally, as in Med Lab Mgmt., there are several alternative sources of information concerning the cause of the Tracey Road Fire that have not been pursued by Plaintiff. In this respect, the meter from the Tracey Road Fire was inspected by the Idaho State Fire Marshal, the Northern Lakes Fire Protection District, and Farmers' own expert. Farmers, as a putative Plaintiff in this action by virtue of its subrogated interest, presumably has access to the opinions and report of its own expert regarding that inspection. Yet, assuming, *arguendo,* that it does not, the same information could be sought from either the Idaho State Fire Marshal or the Northern Lakes Fire Protection District. Nonetheless, at no time during the nearly 2 1/2 years since Avista first produced information to Plaintiffs concerning the Tracey Road Fire have Plaintiffs sought information, by way of deposition or records subpoena, from either the Idaho State Fire Marshal or the Northern Lakes Fire Protection District. As in Med Lab Mgmt., this failure belies the prejudice Plaintiffs now claim by virtue of the meter's disposal, and weighs against the Court's application of spoliation to the present circumstances.

## IV. CONCLUSION

Under the totality of the circumstances, Avista submits that its disposal of the gas meter from the Tracey Road Fire, although unfortunate, does not warrant the imposition of sanctions for spoliation. The disposal of the meter was inadvertent, does not give rise to a reasonable conclusion that evidence of the meter would have been unfavorable, and did not materially prejudice Plaintiffs' position in the litigation. Accordingly, Avista requests the Court decline to exercise its discretion in this instance, and that it deny Plaintiffs' Motion for Sanctions.

DATED this __16TH__ day of March, 2012.

                              PAINE HAMBLEN LLP

By: __/s/ GREGORY C. HESLER__
     William J. Schroeder, ISB No. 6674
     Gregory C. Hesler, ISB No. 8667
     717 West Sprague Avenue, Suite 1200
     Spokane, Washington 99201-3505
     Telephone: (509) 455-6000
     Facsimile: (509) 838-0007
     william.schroeder@painehamblen.com
     greg.hesler@painehamblen.com
     Attorneys for Defendant/Third Party
     Plaintiff Avista Corporation, d/b/a Avista
     Utilities

**DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 14**

## CERTIFICATE OF SERVICE

I hereby certify that on this __16th__ day of March, 2012, I electronically filed the foregoing **DEFENDANT AVISTA CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION**, with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Megan L. McFarland | mmcfarland@cozen.com; dbrunette@cozen.com; klottsfeldt@cozen.com |
| William J. Schroeder | william.schroeder@painehamblen.com<br>marsha.ungricht@painehamblen.com<br>debbie.miller@paienhamblen.com |
| Gregory C. Hesler | greg.hesler@painehamblen.com<br>marsha.ungricht@painehamblen.com<br>debbie.miller@painehamblen.com |
| James L. Martin | jlm@moffat.com; ecf@moffat.com; knc@moffat.com; lps@moffat.com; moffattthomas@hotmail.com; tmh@moffatt.com |
| Tyler J. Anderson | tya@moffatt.com; moffattthomas@hotmail.com; jrt@moffatt.com; ecf@moffatt.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

*No manual recipients*

                                                 /s/ GREGORY C. HESLER
William J. Schroeder, ISB No. 6674
Gregory C. Hesler, ISB No. 8667
PAINE HAMBLEN LLP
717 West Sprague Avenue, Suite 1200
Spokane, Washington 99201-3505
Telephone: (509) 455-6000
Facsimile: (509) 838-0007
william.schroeder@painehamblen.com
greg.hesler@painehamblen.com
Attorneys for Defendant/Third Party Plaintiff
Avista Corporation, d/b/a Avista Utilities

I:\Spodocs\11150\04294\PLEAD\01005100.DOC

**DEFENDANT AVISTA CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS DUE TO SPOLIATION - 15**