Megan L. McFarland, ISB#:  7976
COZEN O'CONNOR
1201 Third Ave., Suite 5200
Seattle, WA  98101-3071
Telephone: 206.340.1000
Facsimile: 206.621.8783
mmcfarland@cozen.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO, NORTHERN DIVISION

| | |
|---|---|
| WILLIAM J. EVANS, individually and d/b/a WJ ENTERPRISES and MELONY EVANS,<br><br>Plaintiffs,<br>v.<br><br>AVISTA CORPORATION d/b/a AVISTA UTILITIES, INC., and MID-MOUNTAIN LAND & TIMBER, INC.,<br><br>Defendants.<br>―――――――――――――――――――<br>AVISTA CORPORATION d/b/a AVISTA UTILITIES, INC.,<br><br>Third-Party Plaintiff,<br>v.<br><br>MID-MOUNTAIN LAND & TIMBER, INC.,<br><br>Third Party Defendant. | Case No.: 10-473-N-REB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT AVISTA CORPORATION [DKT 58]** |

I.      **INTRODUCTION**

Despite the arguments made by Avista in its Response, the elements necessary for this

Court to sanction Avista for the disposal of the Tracey Road Meter remain undisputed.  Avista

does not contest that it intentionally disposed of the Tracey Road Meter.  Nor does Avista dispute that the Tracey Road Meter is relevant to the current litigation or that it was aware of the meter's relevance when it disposed of it.  Similarly, Avista has not come forward with any litigation hold letters or other evidence of affirmative steps it took to ensure the Tracey Road Meter was retained for the current litigation.  There is also no dispute that the Evans made inquiries regarding the location of the Tracey Road Meter less than a month before Avista disposed of it.  Further, the Evans were clearly prejudiced by the disposal of the Tracey Road Meter.  Without this meter, the Evans' retained Metallurgical Engineer has no physical evidence to examine to determine if the meter suffered snow or ice damage.

Accordingly, because Avista intentionally disposed of relevant evidence, and the Evans were prejudiced by this spoliation, this Court should sanction Avista by ordering that it be established that the Tracey Road Fire occurred as a result of snow falling on the meter and excluding any evidence that rebuts the same.  This Court should also allow an instruction that the jury may infer that based on the destruction of the Tracey Road Meter, the meter would have been unfavorable to Avista.

## II.   LEGAL ARGUMENT

**A.   The Evans are Entitled to a Designation that the Tracey Road Fire was Caused by Snow Falling on the Avista Meter and an Exclusion of Evidence Rebutting the Same**

1.   Avista Misstates the Applicable Standard for an Exclusion of Evidence Sanction

Throughout its Response, Avista argues the wrong standard this Court is required to apply when determining if the exclusion of evidence is an appropriate sanction.  Avista claims that "willfulness or fault is generally required for the exclusion of evidence unless an adverse instruction would be insufficient to cure the prejudice to the opposing party." (Avista Resp. at 8.)  In support of this statement, Avista cites footnote 2 in *Unigard v. Lakewood Engineering & Manufacturing,* 982 F.2d 363 (9th Cir. 1992).  (Id.)  However, a continued reading of that footnote establishes that bad faith is <u>not</u> required for the exclusion of evidence.  As the Court continued to explain in the footnote:

> The bad-faith requirement recognized in *Roadway*, however, is very likely limited to the context of sanctions in the form of cost sharing and fee shifting. This court, has, since *Roadway*, confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party.

*Id.* at 368 fn. 2 (citations omitted).

Thus, contrary to Avista's argument, bad faith is <u>not</u> necessary for an exclusion of evidence sanction. Instead, as recognized in this District, "a finding of bad faith is not required before spoliation sanctions be imposed – **sanctions may be imposed on the basis of simple notice of potential relevance to the litigation**." *Miller v. Four Winds Int'l. Corp.*, --- F.Supp.2d---, 2011 WL 5080032, *4 (D. Idaho 2011). Here, there is no dispute that the Tracey Road Meter is relevant to this matter. Similarly, Avista does not dispute that it knew the Tracey Road Meter was relevant when it intentionally disposed of the meter. Thus, following precedent from this Court and the Ninth Circuit, sanctions against Avista, including the exclusion of evidence, are appropriate.

2.     An Exclusion of Evidence Sanction is both Appropriate and Necessary

As a sanction for Avista's intentional destruction of relevant evidence, this Court should direct that it be established for the purposes of this action that the Tracey Road Fire occurred as a result of snow falling on the Avista meter and that Avista had first-hand knowledge of this fact.[1] Furthermore, all evidence tending to rebut these facts should be excluded. *See* Rule 37(b)(2)(A)(ii). As explained in the Evans' Motion, factors to be considered when determining the severity of the sanction to impose against a party for failure to preserve evidence include: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice. *Unigard,* 982 F.2d at 368-70. Courts generally will impose a significant sanction for spoliation as long as there is a

---

[1] If spoliation occurs after the case is filed, as is the case here, Rule 37(b)(2) governs the sanctions. *See Unigard* at 368. Rule 37(b)(2)(A)(i) allows for a court order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 3

showing that the spoliation was willful and the loss of evidence prejudiced the opposing party. *See e.g. Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.2006). The willful requirement is easily met. There is no question that the Tracey Road Meter - evidence that Avista knew was relevant to the present action - was intentionally disposed of by Avista. Further, given Avista's insistence in its Response that it assumed the Tracey Road Meter was snow damaged, the Evans' requested sanction that the Court find that the Tracey Road Meter was in fact snow damaged does not seem to be a severe sanction.

Avista's disposal of the Tracey Road Meter also clearly prejudiced the Evans. In its endeavor to challenge the Evans' claim of prejudice, Avista attempts to rely on two inconsistent positions and ignores the clear prejudice suffered by the Evans. To explain further, on one hand, Avista asserts that its disposal of the meter did not prejudice the Evans because Avista "operated under the assumption that the Tracey Road Fire was the result of snow falling from the building and damaging the gas meter." (Avista Resp. at 4.)   On the other hand, Avista argues – albeit while citing inadmissible testimony from non-expert witness Ken Ela  – that the Tracey Road Fire may have been the result of arson. (Avista Resp. at 3-4.) Regardless of these contradictory arguments, Avista fails to address the fact that the Evans are unquestionably entitled to examine - through the use of *their own* retained experts - the Tracey Road Meter to determine if it suffered snow damage. Nor does Avista address the fact that irrespective of what Avista assumed, the Evans' opportunity to actually examine the meter and potentially prove that snow falling on the meter caused the Tracey Road Fire was jettisoned by the intentional acts of Avista.

It is also worth noting that although Avista now claims it operated under the assumption that the Tracey Road Meter was damaged by snow, throughout this litigation, Avista has continually questioned – and sometimes outright denied – this premise. As an example, William Baker, who is "responsible for doing investigations on Avista's behalf for fires and explosions, gas leaks" testified about the Tracey Road Fire:

> Q.   And it's your recollection that this fire started when snow
> and/or ice fell off the roof and damaged the gas meter?

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 4

> A.    No, ma'am.  I never said that.
>
> Q.    Then clarify for me.
>
> A.    You asked me if I responded to another fire similar to the Evanses' fire in this area and I said yes, and this is one of them.  I don't know for sure that snow and ice caused this failure.  I don't know for sure that snow and ice caused this failure in -- on North Tracey.

(Baker Dep. at 12, 31-32 attached as Ex. C to Anderson Aff. Dkt. 41-1.)  Similarly, Dawn Donahoo, the Avista Claims Specialist that handled the Tracey Road Fire, testified that she was not aware of any fires that resulted from snow falling on a gas meter.  (Donahoo Dep. at 27 attached as Ex. C to McFarland Decl. Dkt. 59, 62.)  While Mike Faulkenberry, Avista's Chief Gas Engineer since 1996 testified:

> Q.    Okay.  Were there any instances that you're aware of where snow, ice fell off a roof, damaged a gas meter and caused a fire besides the Evanses'?
>
> A.    I'm going to say no.

(Faulkenberry Dep. at 6, 20 attached as Ex. "B" to 2nd Anderson Aff. Dkt. 51-1.)  Thus, if there was an assumption that the Tracey Road Meter was snow damaged as Avista now claims, this alleged assumption was not held company wide.  Moreover, Avista's expert, John M. (Jay) Freeman, as recently as two months ago, questioned the cause of the Tracey Road Fire.   In his report, Freeman opines that the Tracey Road Fire was "listed as a broken riser and ignition of gas" and further offered that "photographs of [the Tracey Road] building after the fire show… [that] immediately adjoining buildings have no snow on their roofs."  (Freeman Report at 3-4 attached as Ex A to Second McFarland Decl.)

Thus, although Avista now claims that it "operated on the assumption that the Tracey Road Fire was the result of snow falling from the roof" it continues to both question and deny responsibility for the Tracey Road Fire.  Accordingly, the cause of the Tracey Road Fire remains an issue in this litigation.  Avista's continued denial of its role in the Tracey Road Fire, when it intentionally disposed of the very evidence necessary to determine if snow did in fact damage the meter, is in and of itself enough to establish that the Evans are prejudiced.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 5

Avista's claim that the Evans have not been prejudiced by the disposal of the Tracey Road Meter because they can obtain similar evidence by deposing other individuals and fire department employees who examined the meter also fails. (Avista Resp. at 11-13.) In support of this argument, Avista cites *Medical Laboratory Management Consultants v. American Broadcasting Company, Inc.* 306 F.3d 806 (9th Cir. 2002), a case which is easily distinguishable.

*Medical Lab* involved tortious interference with contracts and other claims by plaintiff lab against defendant television network based on a show defendant broadcast regarding plaintiff's alleged misdiagnosis of pap smears. *Id* at 809. As part of the broadcast, defendants retained experts to examine 623 pap smear slides and found that plaintiff misdiagnosed three slides that had clear pre-cancerous cells. *Id.* at 823. While one of defendants' experts was traveling to New York from Switzerland, a number of the slides were accidentally lost or stolen. *Id.* at 823-24. Although, the defendants tried to locate the slides by hiring a private investigator, flying back to Geneva to look for the slides and interviewing their cab drivers, the slides were never found. *Id.* at 824.

Defendant moved for summary judgment on the tortious interference with contract claim asserting that plaintiff could not establish that defendants' allegations in the broadcast were false. *Id.* at 821-22. In order to overcome summary judgment, plaintiff did not allege that the misdiagnosed slides were in fact normal. *Id.* at 823. Instead, plaintiff argued that defendants' loss of the three slides justified an inference that the slides were normal and therefore the defendant's broadcast was false. *Id.* at 823.

The Ninth Circuit affirmed that a spoliation inference was not necessary because the loss of the slides "did not evidence bad faith, was not intentional and reflected inadvertence that at most was negligence." *Id.* at 824. In further support of its decision, the Ninth Circuit found that there was other available evidence which plaintiffs could use in substitution of the missing slides. *Id.* at 825. Before their loss, two-dimensional digital images of the actual slides were taken, which were sufficient to permit a diagnosis. *Id.* at 825. Furthermore, the doctors who examined the slides were available to be deposed. *Id.* at 825. Thus, the Court concluded that

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 6

because the evidence was lost accidently and there was sufficient available evidence in substitution of the lost slides, defendants inadvertent loss of the slides was not sufficient, by itself, to overcome summary judgment. *Id.* at 825.

Contrary to *Medical Lab*, in the present case, the Tracey Road Meter was not accidentally lost or stolen. The Tracey Road Meter, was intentionally disposed of –

> Q.    (Mr. Anderson) Okay. And that [disposal] was something that you intentionally did? It wasn't done by accident?
>
> A.    **No. I intentionally did it.** It was the last day to do it.

(Donahoo Dep. at 37.)

Additionally, unlike *Medical Lab*, there is not sufficient evidence remaining to permit the Evans' experts to determine what caused the fire. The Evans retained expert, Kevin Lewis, the Senior Metallurgical Engineer at CASE Forensics, cannot examine the Tracey Road Meter to see if it had impact damage, dents of other evidence of snow damage.[2] (Lewis Report at 17 attached as Ex. B to McFarland Decl.) Also, unlike in *Medical Lab*, there are no two dimensional images of the Tracey Road Meter for Lewis to examine.

Further, although Avista claims that the Evans can depose the fire department or other individuals who examined the Tracey Road Meter, that is not sufficient to overcome their prejudice. The Evans' retained expert is a Metallurgical Engineer. The individuals who previously examined the Tracey Road Meter are not engineers, nor do they have Lewis' qualifications. Thus, unlike in *Medical Lab* where the plaintiff had the ability to depose actual doctors who make diagnoses of pap smear slides, here the Evans' only option would be to depose non-engineers who examined a fire scene and evidence *over four years ago*.[3]

---

[2] Although the Evans are not required to establish that the Tracey Road Meter would have contained evidence of liability (Motion at 8-9), given the fact that Lewis found evidence of snow and impact damage on the meter installed at the Evans' Building, it is quite possible he would have found similar evidence on the Tracey Road Meter. (Lewis Report at 6.)

[3] Further, at the time the Tracey Road Meter was examined, these individuals did not know about the numerous other snow damaged meters in the Warren K. Park so they likely did not know to look for snow damage on the meter.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 7

Avista also claims, without citing to any admissible evidence, that Farmers is a "putative Plaintiff in these proceedings" and thus "presumably has access to the opinions and report of its own expert regarding that inspection." [4] (Avista Resp. at 13.)  However, again the Evans should not be required to rely on the work of non-engineers whom they did not hire.[5]  Nor should they be required to incur the time and expense of obtaining reports and opinions from these individuals in order to overcome a prejudice that was the result of Avista's intentional disposal of evidence.  Instead, the Evans' retained Metallurgical Engineer should have had the opportunity to examine the actual Tracey Road Meter to determine if it had evidence of snow damage.  Avista's intentional disposal of the Tracey Road Meter eradicated this opportunity.

Moreover, unlike the plaintiff in *Medical Lab* who did not depose the defendants regarding what was on the slides that were lost, the Evans counsel deposed various Avista employees regarding the Tracey Road Meter and Fire, some of which outright denied that the Tracey Road Fire was the result of snow damage to the meter.  Also, unlike in *Medical Lab* where the plaintiff did not dispute that the lost slides had abnormal cells, here Avista questions whether that snow damage caused the Tracey Road Fire.

Finally, in its Response, Avista claims that it should not be sanctioned because the Evans had two and a half years to inspect the Tracey Road Meter.[6]  Again, Avista misstates the law and the obligations of the parties.  The Evans are not obligated to request that potentially relevant

---

[4] In its Response, Avista presumes that Farmers' already has access to the conclusions of Unified Investigations, the cause and origin investigators retained to investigate the Tracey Road Fire. However, Farmers is in the current litigation as the subrogee of the Evans.  In a subrogation action the insurer steps into the shoes of its insured and only has the rights its insured – the Evans in this matter – may have, not the rights of the insurer as a whole. *See e.g. May Trucking Co. v. Internatl. Harvester Co.*, 543 P.2d 1159 (Idaho 1975).

[5] Contrary to the allegations in its Response that Unified Investigations was retained to represent the Plaintiffs in this action (Avista Resp. at 6), Unified was retained to represent Defendant Mid-Mountain Land & Timber, Inc. (Second McFarland Decl. Ex. C.)

[6] Avista's argument that the Evans' were dilatory in their request to inspect the Tracey Road Meter is disingenuous.  The Evans requested to inspect the Tracey Road Meter less than a year after the Complaint was filed and over three months *before* the discovery deadline had run.

evidence be held by Avista.  Instead, the obligation to retain evidence lies solely with Avista - "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents."  *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003). It is undisputed that Avista failed to meet this requirement.

**B.      The Punitive/Deterrent Rationale Also Supports a Spoliation Sanction Against Avista**

The punitive/deterrent justification for a spoliation sanction also supports the Evans' Motion.  As recognized by the Ninth Circuit, "a party should only be penalized for destroying documents if it was wrong to do so and that requires, at a minimum, some notice that the documents are potentially relevant."  *See Akiona v. U.S.* 938 F.2d 158, 161 (9th Cir. 1991) (citing *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.,* 692 F.2d 214, 218 (1st Cir. 1982 which held that "[t]he inference depends, of course, on a showing that the party had notice that the documents were relevant…").  It is undisputed that at the time Avista intentionally disposed of the Tracey Road Meter, it knew the meter was relevant to the current litigation.  Accordingly, a sanction is appropriate.

Moreover, the deterrent rationales of a spoliation sanction are applicable.[7]  Avista is a sophisticated utility with ample litigation experience, yet it failed to take any affirmative steps such as providing a "litigation hold letter" to ensure that the Tracey Road Meter would be retained for the present litigation.  Further, Avista's counsel wrote to Avista asking for the location of the Tracey Road Meter on August 15, 2011; however, because Linda Clifton, the Claims Specialist handling the Evans matter, was on vacation, *the Meter was disposed of two*

---

[7] The Evans also take issue with Avista's claim that it "faithfully and diligently discharged its discovery obligations."  (Avista Resp. at 11.)  For example, as evidenced by the email attached to the Hesler Affidavit as Ex. 9 the Evans' counsel had to specifically ask for documents regarding various incidents in the Warren K. Park regarding snow damaged meters that should have been provided in response to Interrogatory 11 in Plaintiffs' First Set of Interrogatories which are attached as Ex. A to McFarland Declaration (Dkt. 59, 60).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 9

*days later.* (Avista Resp. at 6.) A sanction in this matter may deter Avista from acting similarly in the future.

Finally, Avista now claims that it always assumed that the Tracey Road Fire was caused by snow damage. The Evans are simply asking that in light of Avista's destruction of the evidence necessary to determine if this assumption was correct, that the Court enter an order that what Avista assumed is an established fact in this case. Accordingly, an Order by this Court that the Tracey Road Fire was caused by snow damage to the meter and an exclusion of evidence rebutting the same is a minor penalty, if any, against Avista.

### III.   CONCLUSION

Well after this litigation was instituted and a month after specific inquiries were made regarding the Tracey Road Meter, Avista intentionally disposed of evidence it knew was relevant. Furthermore, Avista has not come forward with any evidence that it took any action to ensure the Tracey Road Meter was preserved for this litigation. The intentional destruction of evidence also prejudiced the Evans. Accordingly, as a sanction for Avista's spoliation, this Court should order that it be established that the Tracey Road Fire occurred as a result of snow falling on the meter, and exclude any evidence that rebuts the same. This Court should also allow an instruction that the jury may infer that based on the destruction of the Tracey Road Meter, the meter would have been unfavorable to Avista.

DATED this 2nd day of April, 2012.

COZEN O'CONNOR

By:   */s/ Megan L. McFarland*
MEGAN L. MCFARLAND
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gregory C. Hesler                        greg.hesler@painehamblen.com
*Counsel for Def Avista Utilities*

William J. Schroeder                     william.schroeder@painehamblen.com
*Counsel for Def Avista Utilities*

James L. Martin                          jlm@moffatt.com
Tyler J. Anderson                        tya@moffatt.com
*Counsel for Def Mid-Mountain*

DATED this 2nd day of April, 2012.

                                         COZEN O'CONNOR


                                         By:   /s/ *Debbie Brunette*
                                               Debbie Brunette, Secretary to
                                               Megan L. McFarland


SEATTLE\1294905\1 231207.000


PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT
AVISTA CORPORATION [DKT 58] - 11