## UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM J. EVANS, individually and d/b/a WJ ENTERPRISES and MELONY EVANS, | Case No.: 10-473-N-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | |
| AVISTA CORPORATION d/b/a AVISTA UTILITIES, INC. | **THIRD-PARTY DEFENDANT MID-MOUNTAIN LAND & TIMBER, INC.'S MOTION FOR SUMMARY JUDGMENT (Docket No. 41)** |
| Defendant. | |
| | **PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PRAYER FOR PUNITIVE DAMAGES AGAINST DEFENDANT AVISTA CORPORATION (Docket No. 53)** |
| AVISTA CORPORATION d/b/a AVISTA UTILITIES, | |
| Third-Party Plaintiff, | |
| KEN ELA, individually, and MID-MOUNTAIN LAND & TIMBER, INC., | **PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION AGAINST DEFENDANT AVISTA CORPORATION (Docket No. 58)** |
| Third-Party Defendant. | |
| | **DEFENDANT AVISTA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PLAINTIFFS' CLAIMED DAMAGES (Docket No. 71)** |

Currently pending before the Court are the following motions: (1) Third-Party Defendant

Mid-Mountain Land & Timber, Inc.'s Motion for Summary Judgment (Docket No. 41); (2)

Plaintiffs' Motion for Leave to Amend Complaint to Add Prayer for Punitive Damages Against

Defendant Avista Corporation (Docket No. 53); (3) Plaintiffs' Motion for Sanctions Due to

**MEMORANDUM DECISION AND ORDER - 1**

Spoliation Against Defendant Avista Corporation (Docket No. 58); and (4) Defendant Avista

Corporation's Motion for Partial Summary Judgment Re: Plaintiffs' Claimed Damages (Docket

No. 71).  Having carefully reviewed the record, participated in oral argument, and otherwise

being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  GENERAL BACKGROUND

This action involves a claim for property damage brought by Plaintiffs William J. Evans,

d/b/a WJ Enterprises, and Melony Evans ("Plaintiffs") as a result of a January 2, 2009 fire in

their commercial building (the "Building"), located within the Warren K. Industrial Park at

11888 N. Reed Road, Hayden, Idaho.

Third-Party Defendant Mid-Mountain Land & Timber, Inc. ("Mid-Mountain") designed,

developed, and constructed the Building itself, while Defendant/Third-Party Plaintiff Avista

Corporation, d/b/a Avista Utilities, Inc. ("Avista") supplied and installed the gas meter at the

Building.  The gas meter was located underneath the slope-side of the Building.  A factual

dispute exists as to whether Mid-Mountain or Avista determined the location of the Building's

gas meter.  Moreover, according to Plaintiffs, the Building's gas meter was not protected from

snow and/or ice that may slide off the roof; Avista contends that the roof area above the

Building's gas meter was equipped with a snow break (supplied and installed by Mid-Mountain),

designed to prevent accumulated snow and ice from sliding off the roof.

During the winters of 2007-2008 and 2008-2009, there is no dispute that northern Idaho

and eastern Washington experienced record snowfall accumulation.  As a result, during these

times, a number of gas meters at the Warren K. Industrial Park were damaged due to snow

and/or ice sliding off of the buildings' roofs.[1]  In fact, around January 2, 2009, accumulated snow

---

[1]  The Warren K. Industrial Park encompasses 49 similarly-designed buildings with
metal-sloped roofs.

**MEMORANDUM DECISION AND ORDER - 2**

and ice slid off of the Building's roof, damaged the Building's gas meter, and caused a gas leak. The gas leaking from the Building's damaged gas meter immediately ignited, resulting in a significant fire at the Building.  According to Plaintiffs, this fire destroyed the Building and the majority of its contents.

Through this action, Plaintiffs argue that the January 2, 2009 fire would not have occurred but for Avista's negligent conduct.  Indeed, Plaintiffs assert the following causes of action against Avista: (1) negligence, (2) negligence per se, (3) gross negligence, and (4) strict liability.  Avista denies that it is responsible for the fire at the Building and related damage, while bringing a third-party claim against Mid-Mountain, asserting the following causes of action against Mid-Mountain: (1) contribution, and (2) indemnification.[2]

The Court now has before it four interrelated, but independent, motions:

1.     Mid-Mountain moves for summary judgment to dismiss Avista's (as well as Plaintiffs') claims against it, arguing that (1) there can be no indemnity relationship between Mid-Mountain and Avista because Avista cannot assert that it is without fault; (2) there is no basis for Avista to assert a contribution claim against Mid-Mountain because Avista has not and cannot plead that the two parties are joint tortfeasors; (3) there is no breach of an implied warranty of habitability because the doctrine applies only to residential properties; (4) Avista has

---

[2]  After Avista brought its Third-Party Complaint against Mid-Mountain, Plaintiffs amended their own Complaint to assert a claim for "liability" against Mid-Mountain.  Therein, Plaintiffs premised their new claim against Mid-Mountain upon Avista's claims against Mid-Mountain.  *See* First Am. Compl., p. 8 (Docket No. 30, Att. 1) ("[P]ursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure hypothetically and in the alternative, the Evans hereby assert claims against Mid-Mountain on the same basis as those alleged by Avista.").  Additionally, Plaintiffs claim that Mid-Mountain breached the implied warranty of habitability.  *See id.* ("The Evans further assert hypothetically and in the alternative, that based on allegations made by Avista against Mid-Mountain in its Third-Party Complaint and Affirmative Defenses, Mid-Mountain breached the implied warranty of habitability.").

**MEMORANDUM DECISION AND ORDER - 3**

a higher duty to its customers and the public as the provider of a utility; and (5) Avista undertook

and voluntarily assumed an affirmative duty to protect the meter outside the Building.

       2.     Plaintiffs move to amend their Complaint to add a prayer for punitive damages

against Avista.  Plaintiffs note that, in the year before the at-issue fire, there were several

incidents at the Warren K. Industrial Park where a gas meter was damaged by falling snow or

ice.  Despite such preceding events, Plaintiffs argue that Avista failed to ensure that its meter

was sufficiently protected from similar damage and that such disregard warrants a claim for

punitive damages.

       3.     Plaintiffs move for sanctions against Avista for discarding evidence, previously

identified as being relevant in its Initial Disclosures and in response to Plaintiffs' discovery

requests.

       4.     Avista moves for partial summary judgment, attacking Plaintiffs' ability to

recover (1) damages allegedly incurred by Ryan Evans, (2) damages to vehicles not owned by

Plaintiffs, and (3) purported losses of rental income.  Avista also seeks an up-front determination

from this Court that (1) certain expenses are not taxable costs and, therefore, are not recoverable

under applicable law, and (2) the gravamen of this action is not a "commercial transaction" and,

therefore, attorneys' fees are not recoverable under Idaho Code § 12-120(3).

## II.  DISCUSSION

**A.**    **Mid-Mountain's Motion for Summary Judgment (Docket No. 41) and Avista's Motion for Partial Summary Judgment (Docket No. 71)**

       1.     <u>Motion for Summary Judgment: Standard of Review</u>

       Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural

**MEMORANDUM DECISION AND ORDER - 4**

shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and the Court must not make credibility findings.  *Id*.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor.  *Anderson*, 477 U.S. at 256-57.  The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d

**MEMORANDUM DECISION AND ORDER - 5**

1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409,

1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's]

attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

885, 889 (9th Cir. 2003).  A statement in a brief, unsupported by the record, cannot be used to

create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

    2.    Mid-Mountain's Motion for Summary Judgment (Docket No. 41)

    Through its Motion for Summary Judgment, Mid-Mountain seeks to dismiss Avista's

(and Plaintiffs') claims for indemnity and contribution as well as Plaintiffs' claim for breach of

the implied warranty of habitability.

        a.    *Avista's (and Plaintiffs') Indemnity Claim against Mid-Mountain*

    "The common law right of indemnity . . . refers to those situations where a person who

without fault on his part is compelled to pay damages occasioned by the negligence of another."

*May Trucking Co. v. International Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975).  Applying

this framework to the instant action, it would seem as though Avista, via its indemnity claim

against Mid-Mountain, is arguing that, through no fault of its own, it is compelled to pay

damages occasioned by Mid-Mountain's negligence.  The problem with such a theory, however,

is that the record is devoid of any allegation that Mid-Mountain breached any duty owing to

either Avista or Plaintiffs and, therefore, is negligent.  Absent Mid-Mountain's negligence, it

cannot be responsible for indemnifying Avista under principles of common law indemnity.

    Here, Avista does not assert a negligence claim against Mid-Mountain - only indemnity

and contribution causes of action.  Indeed, during oral argument, Avista's counsel candidly

acknowledged that Avista did not have a right to allege a negligence claim against Mid-

**MEMORANDUM DECISION AND ORDER - 6**

Mountain because Avista suffered no harm.[3]  Likewise, despite Avista's counsel's expected

arguments to the contrary, Plaintiffs also do not assert a negligence claim against Mid-Mountain.

To be sure, Plaintiffs' First Amended Complaint (amended only after Avista brought its third-

party claims against Mid-Mountain) seems to premise its "liability" claim against Mid-Mountain

upon the mistaken notion that Avista's Third-Party Complaint and affirmative defenses allege

that Mid-Mountain was negligent.  *See* First Am. Compl., p. 8 (Docket No. 30, Att. 1).  Further,

at oral argument, Plaintiffs' counsel stated in no uncertain terms that Plaintiffs themselves do not

have an independent negligence claim against Mid-Mountain.[4]  In other words, and borrowing an

iconic line from the movie *Cool Hand Luke*, "what we've got here is a failure to communicate"

between Avista and Plaintiffs – each party pointing at the other as the source of any semblance

of a negligence claim against Mid-Mountain.  Perhaps owing to the contorted state of the

pleadings thus far, there is simply no such claim.

Without an identified, underlying duty owed by Mid-Mountain to either Avista or

Plaintiffs, or a corresponding allegation that such duty was ever breached, there can be no viable

claim against Mid-Mountain for common law indemnity.  *See, e.g.*, *Knudson v. Spicer*, 601 P.2d

1089, 1090, n.1 (1979) ("In this Court, both parties continue to argue negligence . . . .  Here, Sun

---

[3]  As an affirmative defense to Plaintiffs' claims, Avista *does* claim that "Plaintiffs' alleged damages, if any, may have been caused by the fault of third parties over whom Defendant has no control or legal responsibility, including, without limitation, Ken Ela and/or Mid-Mountain Land &Timber.  *See* Avista's Ans., p. 7 (Docket No. 11).  Still, as "understood" by Avista's counsel during oral argument, affirmative defenses do not represent substantive claims.

[4]  These realities operate to eviscerate Avista's counsel's argument during the hearing that Mid-Mountain's Motion for Summary Judgment turns on whether *Plaintiffs* have sufficiently put Mid-Mountain on notice of a negligence claim.  Except Plaintiffs' counsel admits that no such claim against Mid-Mountain exists.

**MEMORANDUM DECISION AND ORDER - 7**

Valley and Spicer seek to pass on their liability, or some of it, to Boise Cascade.  As above stated . . . , the Knudsons have not named Boise Cascade as a defendant, and have not charged it with any negligence in the construction or design of the condominium.  Nor . . . has Spicer or Sun Valley charged either with any negligence in that regard.").  To hold otherwise would essentially force Mid-Mountain to defend itself against a non-existent claim, saying nothing of who (as between Plaintiffs and Avista) would even have the burden of proving such a non-existent claim. The Court is not prepared to require such a confused and awkward outcome.  In this respect, Mid-Mountain's Motion for Summary Judgment is granted; Avista's (and Plaintiffs') common law indemnity claims against Mid-Mountain are dismissed.[5, 6]

> b.    *Avista's (and Plaintiffs') Contribution Claim against Mid-Mountain*

In Idaho, "[t]he right of contribution exists among joint tortfeasors, but a joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof."  I.C. § 6-803(1).  A joint tortfeasor "means one . . . of two . . . or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  I.C. § 6-803(4).  A party is jointly and severally liable for the fault of another

---

[5]  In reaching this conclusion, the Court need not address Mid-Mountain's other argument relative to Avista's common law indemnity claim – namely, whether an indemnity relationship exists between Mid-Mountain and Avista, given Avista's alleged inability to assert that it is without fault.

[6]  With respect to any equitable indemnity claims (to the extent they are even distinct from common law indemnity claims) asserted by Avista (and Plaintiff) upon Mid-Mountain, such claims fail for the same reasons.  *See, e.g.*, *Vreeken v. Lockwood Engineering, B.V.*, 218 P.3d 1150, 1166 (Idaho 2009) ("'In order for the doctrine of equitable indemnity to apply, there must be some basis for tort liability against the proposed indemnitor.'") (quoting Am. Jur. 2d *Indemnity* § 20 (2005)).

**MEMORANDUM DECISION AND ORDER - 8**

person where they were acting in concert.  I.C. § 6-803(5).  Acting in concert "means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act."  *Id*.

Here, there are no allegations of – or examples in the record – indicating that Avista and Mid-Mountain are joint tortfeasors.  Similarly, there is no evidence suggesting that Avista and Mid-Mountain acted in concert with one another or otherwise pursued a common plan or design resulting in an intentional or reckless tortious act.  Without these predicate parts, there can be no claim for contribution.  In this respect, Mid-Mountain's Motion for Summary Judgment is granted; Avista's (and Plaintiffs') contribution claims against Mid-Mountain are dismissed.

c.    *Plaintiffs' Breach of Implied Warranty of Habitability Claim Against Mid-Mountain*

Idaho common law recognizes an implied duty of habitability, described in the leading case in this manner:  "[m]ajor defects which render the house unfit for habitation, and which are not readily remediable, entitle the buyer to [relief]."  *Tusch Enter. v. Coffin*, 740 P.2d 1022, 1033 (1987) (quoting *Bethlahmy v. Bechtel*, 415 P.2d 698, 711 (1966)).   Plaintiffs seek to invoke such a warranty in regard to their industrial building.  However, their Building is not a residence that is understood to enjoy the protection of the warranty; the Building is actually a commercial building.  *See* Ela Decl. at ¶ 8 (Docket No. 41, Att. 3); *see also* Ex. 1 to Ela Decl. (Docket No. 41, Att. 3) (Certificate of Occupancy issued by City of Hayden Department of Building Inspection, identifying Building's use as "Light Industrial Office/Shop").   Plaintiffs seek to expand the warranty's protection beyond dwellings and into commercial buildings.  The Court concludes that Idaho law does not support such an application to these facts.

As Plaintiffs' admit, "[t]he law in Idaho regarding the . . . warranty . . . is admittedly scant."  *See* Pls.' Resp. to Mid-Mountain's Mot. for Summ. J., p. 4 (Docket No. 48).  Still, any

**MEMORANDUM DECISION AND ORDER - 9**

application of the warranty to commercial buildings, while not specifically addressed by Idaho's case law, is, simply put, a stretch – one that the undersigned believes is not something the Idaho Supreme Court would endorse if confronted with the issue.[7]  Plaintiffs' expansive reading of *Tusch* does not alter this perspective.

Plaintiffs correctly state that *Tusch* does not hold that the warranty explicitly applies only to residential structures.  *See id*. at p. 3.  However, in implying that *Tusch* leaves open the door for the warranty's application to commercial buildings because the buildings at-issue there were used for commercial purposes, Plaintiffs ignore the fact that the buildings contained residences, the only arguably commercial context was the fact that the residences were rented by their occupants, rather than owned by the occupants.  *See Tusch*, 740 P.2d at 1024.  Thus, *Tusch* cannot be read to fully support Plaintiffs' position.  In fact, the opposite is true: the material facts of *Tusch* are those that identify the residential nature of the use of the buildings, not whether or not they are owned or rented by their occupants.  The policy served by the warranty of habitability is equally applicable to a rental residence as to a residence owned by the occupant, the emphasis is upon the essentials that distinguish a residence from other types of buildings. *See, e.g.*, *id.* at 1033, n.7 (highlighting cases discussing the warranty as follows:  "Habitability [being] synonymous with suitability for living purposes; the house must be occupiable"; "At a minimum, the necessities of a habitable residence include sufficient heat and ventilation, adequate light, plumbing and sanitation and proper security and maintenance"; "Habitability covers vital facilities necessary to maintain premises in a livable condition" (internal citations omitted)).

---

[7]  At its most basic level of consideration, the use of the term "habitability" when describing the warranty necessarily connotes an element of *living*, found not in commercial buildings, but, rather, in dwellings.

**MEMORANDUM DECISION AND ORDER - 10**

Because the Building is not a dwelling, this Court finds that Plaintiffs may not maintain a claim for breach of the implied warranty of habitability, as that warranty is recognized under Idaho law.  In this respect, Mid-Mountain's Motion for Summary Judgment is granted; Plaintiffs' breach of implied warranty of habitability claim against Mid-Mountain is dismissed.

3.      Avista's Motion for Partial Summary Judgment (Docket No. 71)

Through its Motion for Partial Summary Judgment, Avista disputes Plaintiffs' ability to recover (1) damages allegedly incurred by Ryan Evans, (2) damages to vehicles not owned by Plaintiffs, and (3) purported losses of rental income.  Avista also argues that (1) certain expenses are not taxable costs and, therefore, are nor recoverable under applicable law, and (2) this action is not a "commercial transaction" and, therefore, attorneys' fees are not recoverable under Idaho Code § 12-120(3).

a.      *Damages Allegedly Incurred by Ryan Evans*

As part of their damages ($19,675.82), Plaintiffs attempt to recover damages attributable to their son, Ryan Evans.  Because Ryan Evans is not a party to the action, Avista argues that Plaintiffs may not recover the damages of a non-party:

> Thus, whether framed as an issue of standing, as a measure of damages, as a question of mitigation, or as an issue of fairness, Plaintiffs are not, in any case, entitled to seek recovery on behalf of a third party, including their adult son.  Ryan Evans was fully capable of asserting any claims for damages that he believed were necessary and/or appropriate with respect to the January 2, 2009 fire at the Evans' Building.  Ryan Evans' decision not to proceed with such a claim does not confer standing onto Plaintiffs, nor does it otherwise grant Plaintiffs the right to seek recovery on his behalf.

*See* Avista's Mem. in Supp. of Mot. for Partial Summ. J., p. 7 (Docket No. 71, Att. 1).  In response, Plaintiffs claim that Ryan Evans assigned any and all interest he had in the claimed

**MEMORANDUM DECISION AND ORDER - 11**

damages and, therefore, Plaintiffs may properly recover the same in this action. *See* Pls.' Opp. to Avista' Mot. for Partial Summ. J., pp. 5 & 10-11 (Docket No. 75).

Notwithstanding some potential issues surrounding the assignment itself (*see, e.g.*, Avista's Reply in Supp. of Mot. for Partial Summ. J., p. 3 (Docket No. 80) (discussing timing of assignment, consideration, and possible statute of limitations implications)), the damages associated with Ryan Evans became more fully evident during the deposition of Plaintiff William Evans (before any assignment).  Apparently due to disagreement between counsel about arrangements, Ryan Evans had not been deposed as of the date the Court heard argument upon this motion.

The Court will not strike the damages associated with Ryan Evans at this time.  Instead, the Court orders the parties to meet, confer, and agree upon a date to depose Ryan Evans.  If, after take Ryan Evans' deposition, Avista wishes to renew its objection to these damages, it may do so via a motion in limine before trial.  Until then, Avista's Motion for Partial Summary Judgment is denied in this respect.

b.       *Damages to Vehicles Not Owned by Plaintiffs*

As part of their alleged damages ($201,000.00), Plaintiffs seek to recover the value of three trucks damaged in the January 2, 2009 fire.  Plaintiffs leased each of these vehicles from Western Peterbilt, Inc. ("Western Peterbilt") pursuant to agreed-upon payment schedules, the completion of which entitled Plaintiffs to exercise a $1.00 purchase option as to each vehicle. As of January 2, 2009, Plaintiffs were still leasing these three vehicles; however, after January 2, 2009, Plaintiffs continued making payments on these three vehicles and now own these vehicles outright.  Because Plaintiffs were not the title owners of these vehicles as of January 2, 2009,

**MEMORANDUM DECISION AND ORDER - 12**

Avista argues that Plaintiffs cannot recover their value as damages.  *See* Avista's Mem. in Supp. of Mot. for Partial Summ. J., pp. 7-10 (Docket No. 71, Att. 1).  In response, Plaintiffs claim that they were contractually obligated to continue to make lease payments on these vehicles to Western Peterbilt – even after the fire – and now, as the vehicles' owners, they may properly seek to recover for their corresponding damage.  *See* Pls.' Opp. to Avista' Mot. for Partial Summ. J., pp. 4-5 & 7-10 (Docket No. 75).

Under Avista's argument, no entity could recover for the damaged vehicles.[8]  In the context of Avista's Motion for Partial Summary Judgment, the Court disagrees.  Construing all reasonable inferences in Plaintiffs' favor, Plaintiffs were contractually obligated to make scheduled payments on each of the three vehicles, accruing equity thereupon with each payment until exercising a payment option for $1.00 apiece.  It is true that, had Plaintiffs stopped making payments after January 2, 2009 (which they could have done), the vehicles would have been returned to Western Peterbilt; yet, this argument ignores not only the relatively negligible penalties associated with doing so, but also the relinquishment of the substantial amounts already paid toward the lease over time – amounts contributing, ultimately, to Plaintiffs' ownership of the vehicles and distinguishable from a rental arrangement.  To adopt Avista's argument, this Court would have to conclude as a matter of law that, as a result of a fire that they did not cause, Plaintiffs should then have stopped making their lease payments to Western Peterbilt, foregone any and all investment in the vehicles up to that date (by virtue of their lease payments), and

---

[8]  Plaintiffs' alleged failure to insure the vehicles is immaterial for the purposes of Avista's Motion for Partial Summary Judgment and will not operate to create a windfall to Avista when seeking to avoid damages associated with their alleged liability.

**MEMORANDUM DECISION AND ORDER - 13**

returned the vehicles to Western Peterbilt.  Such a conclusion is not required by law, and

therefore Avista is not entitled to partial summary judgment on this claim.  Accordingly,

Avista's Motion for Partial Summary Judgment is denied in this respect.[9]

c.    <em>Purported Losses of Rental Income</em>

As part of their damages ($41,501.55), Plaintiffs seek to recover lost monthly rental

income upon the Building as a result of the January 2, 2009 fire.  As a basis for such recovery,

Plaintiffs allege that an oral contract existed between WJ Enterprises and Plaintiff William

Evans whereby WJ Enterprises agreed to pay $3,486.58 in monthly rental payments to use the

Building.  According to Plaintiffs, WJ Enterprises justifiably stopped paying rent after the

January 2, 2009 fire.  Avista argues that, because (1) these rental payments went directly from

WJ Enterprises to Pioneer Title to satisfy Plaintiffs' mortgage obligations, and (2) the mortgage

was paid off in full by Plaintiffs' insurer following the fire, "any damages associated with the

loss of the building were included within the Evans' property damage claim."  *See* Avista's

Mem. in Supp. of Mot. for Partial Summ. J., p. 12 (Docket No. 71, Att. 1).  Plaintiffs respond

that WJ Enterprises' $3,486.58 payment – whether to satisfy a mortgage obligation or not –

represented a commensurate monthly benefit to Plaintiffs for WJ Enterprises' use of the Building

(i.e., rent).  *See* Pls.' Opp. to Avista's Mot. for Partial Summ. J., p. 12 (Docket No. 75).

Construing all reasonable inferences in Plaintiffs' favor as this Court is required to do,

the Court generally agrees with Plaintiffs.  The fact that WJ Enterprises bypassed Plaintiff

William Evans and made payments directly to Pioneer Title to satisfy the Evans' mortgage

commitments is of no legal consequence when considering that, in doing so, Plaintiffs received a

---

[9]  Avista is free to argue at trial that, in relation to these damages, Plaintiffs did not
mitigate their damages as that theory is understood under applicable law.

**MEMORANDUM DECISION AND ORDER - 14**

benefit in that proportionate amount by not having to separately make that same mortgage payment.  Such payments existed (and would have continued to exist) independent of what they were ultimately used for – in this case, mortgage payments, even though the mortgage was eventually satisfied.  Avista's Motion for Partial Summary Judgment is denied in this respect.

This holding does not preclude Avista from challenging the bona fides of the alleged oral rental contract at trial, or to present other evidence and raise other arguments as to whether Plaintiffs should be entitled to recover such damages from Avista.[10]

> **d.      Recovery of Alleged Non-Taxable Costs**

As part of their damages, Plaintiffs seek to recover certain miscellaneous expenses (trip expenses and mediation expenses totaling $6,773.68), man-hour time spent processing Plaintiffs' claim (hours expended on contents loss list, hours expended on claim work, and hours expended cleaning salvaged goods – multiplied by $50.00/hour – totaling $36,000.00).  Characterizing these figures as "costs," Avista argues that "they do not constitute taxable costs and are not recoverable in this action."  *See* Avista's Mem. in Supp. of Mot. for Partial Summ. J., p. 13 (Docket No. 71, Att.1).  In response, Plaintiffs argue that these figures are not costs, but recoverable as damages flowing from the January 2, 2009 fire.  *See* Pls.' Opp. to Avista's Mot. for Partial Summ. J., pp. 12-13 (Docket No. 75).

Through its Motion for Partial Summary Judgment, Avista asks the Court to agree with its characterization of the above-referenced outlays as costs and, further, to rule that such costs

---

[10]  Having said this (and as brought up during oral argument), the Court is mindful of the issues raised by the alleged obligations between WJ Enterprises and Plaintiff William Evans where WJ Enterprises operates as an assumed business name with Plaintiff William Evans as the sole proprietor.  However, the parties did not brief this issue.  Avista is free to develop the record more fully in this regard and renew its objection via a motion in limine before trial.

**MEMORANDUM DECISION AND ORDER - 15**

are not recoverable as a matter of law.  The determination of a litigant's ability to recover costs, however, follows a decision on the merits and in accordance with the applicable rules on the subject – namely FRCP 54(d), 28 U.S.C. § 1920, and District of Idaho Local Civil Rule 54.1.  Until then, Avista's request in the form of a dispositive motion is premature.  Further, to the extent that Avista seeks to have the Court declare such purported damages as "costs" pursuant to the applicable rule, and thereby unavailable to Plaintiffs as part of their damages case, the Court will not do so.  Such issues are not appropriately posed in the context of Avista's argument, although such alleged damages may well be subject to challenge on other grounds.  Accordingly, Avista's Motion for Partial Summary Judgment is denied in this respect.[11]

### e.    Application of Idaho Code § 12-120(3)

Idaho Code section 12-120(3) provides that the prevailing party "shall be allowed" an award of reasonable attorneys' fees in any civil action to recover on . . . "any commercial transaction."  I.C. § 12-120(3).  The statute defines the term "commercial transaction" to mean "all transactions except transactions for personal or household purposes."  *Id*.  Under Idaho Code section 12-120(3), an award of attorneys' fees is proper if "the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover."  *Brower v. E.E. DuPont De Nemours and Co.*, 792 P.2d 345, 349 (Idaho 1990).  Avista argues that Idaho Code § 12-120(3)'s attorneys' fees provision is inapplicable because this action does not involve a commercial transaction.  *See* Avista's Mem. in Supp. of Mot. for Partial Summ. J., p. 17

---

[11]  Although not extensively discussed in their briefing thus far, to the extent such expenditures are not actually damages (as Plaintiffs' contend) recoverable under the legal theories alleged in Plaintiffs' pleadings, Avista is free to make such arguments via a motion in limine before trial.

**MEMORANDUM DECISION AND ORDER - 16**

(Docket No. 71, Att. 1) ("Here, the gravamen of the parties' dispute is not a commercial transaction, but instead is addressed to the question of whether any party can be responsible for the unpredictable, and sometimes devastating, forces of nature.  Accordingly, attorney's fees are not appropriate under Idaho Code § 12-120(3).").  Plaintiffs disagree, countering that the gravamen of their action is a commercial transaction.  *See* Pls.' Opp. to Avista's Mot. for Partial Summ. J., p. 15 (Docket No. 75).

As with Avista's attempt to have this Court issue a ruling concerning the recovery of certain self-identified costs (*see supra*), asking for a determination, before trial, that this action is not dependent upon an underlying commercial transaction is likewise premature on the existing record.  In some cases, such a ruling can reasonably be made before trial.  However, this case has shifting dunes and without the benefit of a trial and its panoply of testimonial and documentary evidence, the Court is not in a position to make such a decision at this time.  Accordingly, Avista's Motion for Partial Summary Judgment is denied in this respect.

**B.    Plaintiffs' Motion for Leave to Amend Complaint to Add Prayer for Punitive Damages Against Avista (Docket No. 53)**

"A prayer for punitive damages is not a stand-alone cause of action, but flows from an underlying cause of action, such as a breach of contract or a tort, when the conduct of a party meets the threshold level of being oppressive and outrageous."  *See Boise Tower Associates LLC v. Washington Capital Joint Master Trust*, 2006 WL 1749656 at *12 (D. Idaho 2006).  Conduct justifying punitive damages requires "an intersection of two factors: a bad act and a bad state of mind."  *See Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 962 (Idaho 1980).  The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of - or disregard for - its likely consequences, and must (2) act

**MEMORANDUM DECISION AND ORDER - 17**

with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully.  *See Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004).  For plaintiffs to be entitled to amend their complaint to add a claim for punitive damages, they must show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  *See* I.C. § 6-1604(2).

To support their argument in favor of adding a claim for punitive damages, Plaintiffs point to several incidents in the winter of 2007/2008 (the year preceding the accident at Plaintiffs' Building) and in early winter 2009 (immediately before the accident in question here), when other buildings in the Warren K. Industrial Park experienced damaged gas meters caused by snow.  Such incidents are summarized here:

- January 10, 2008: Avista's incident report noted a "Code 5" (leaking gas), with the meter set assembly "buried in a snow bank."  *See* Ex. C to McFarland Decl. (Docket No. 53, Att. 4).

- February 14, 2008: Avista's incident report noted that "snow/ice fell off roof (no m[eter] protection) . . . ."  *See* Ex. D to McFarland Decl. (Docket No. 53, Att. 4).

- February 16, 2008: Avista's incident report noted a "Code 9" (uncontrolled blowing gas) and that "snow f[rom] w[arehouse] roof unloaded and buried [meter set assembly]."  *See* Ex. E to McFarland Decl. (Docket No. 53, Att. 4).

- February 20, 2008: Avista's incident report noted a Code 9 and that "nipple between service valve and reg[ulator] cracked due to snow falling on m[eter]."  *See* Ex. F to McFarland Decl. (Docket No. 53, Att. 4).

- February 21, 2008: Avista's incident report noted a Code 9 and that "snow off roof broke nipple below service reg[ulator]."  *See* Ex. G to McFarland Decl. (Docket No. 53, Att. 4).

- February 24, 2008: A building was destroyed by fire – the "Tracey Road Fire."  Although an investigation determined that the fire may have started

**MEMORANDUM DECISION AND ORDER - 18**

in the attic of the building, the actual cause of the fire was unknown.  *See* Ex. H to McFarland Decl. (Docket No. 53, Att. 4); *see also infra*.  Still, although emphasizing that he did not know the cause of the February 24, 2008 fire, Avista's representative, William Baker, testified that it was possible that snow or ice fell off the building's roof, damaged the gas meter, and caused the fire.  *See* Baker Dep. at 33:5-25, attached as Ex. C to Anderson Aff. (Docket No. 41, Att. 6).

- <u>January 1, 2009</u>: Avista incident report noted a Code 9 and that "snow slid off roof and broke riser above the service riser."  *See* Ex. I to McFarland Decl. (Docket No. 53, Att. 4).

According to Plaintiffs, the incidents referenced above, coupled with (1) Avista's underlying responsibility to protect its gas meters from falling snow and ice (*see* Faulkenberry Dep. at 28:9-25, attached as Ex. B to Anderson Aff. (Docket No. 51, Att. 1)); (2) Avista's related "duty to exercise 'the highest degree of care practicable to avoid injury to its patrons and the public'" (*see* Pls.' Mem. in Supp. of Mot. to Am. Compl., p. 11 (Docket No. 53, Att. 2) (quoting *Doxstater v. Northwest Cities Gas Co.*, 154 P.2d 498, 499 (1944))); and (3) Avista's failure to perform a comprehensive assessment of the potential dangers to its gas meters owing to heavy snowfall following the winter of 2007/2008 and how to prevent such accidents in the future (like the one to the Building) (*see* Pls.' Mem. in Supp. of Mot. to Am. Compl., pp. 8-9 (Docket No. 53, Att. 2)), justify an amendment to their Complaint to add a claim for punitive damages against Avista.

Avista does not dispute the historical record relating to its gas meters being damaged as a result of snow and/or ice.  *See* Avista's Opp. to Pls.' Mot. to Am. Compl., p. 6 (Docket No. 54) (while pointing out that "[s]everal of the incidents referred to, however, did not involve snow from a roof, but rather snow accumulation on the ground.").  Moreover, Avista does not deny its duties, as a gas utility, to protect its customers and the public, while also maintaining its gas

**MEMORANDUM DECISION AND ORDER - 19**

meters.  More-or-less accepting these facts for the purposes of Plaintiffs' amendment efforts, Avista nonetheless challenges any assertion that its conduct was unreasonable or, for that matter, performed with any harmful state of mind.  To this end, Avista argues that, in the spring and summer of 2008, it identified all metal-roofed structures in the Warren K. Industrial Park "in an effort to confirm that some method of protecting the gas meter had been implemented."  In buildings without protection, Avista discussed snow protection with the owner and, in some instances, installed snow protection itself.  *See id*. at p 12.  Additionally, Avista emphasizes that, throughout the winters of 2007/2008 and 2008/2009, it issued press releases advising customers of (1) their responsibility to keep their gas meters clear of snow and ice, (2) the need to prevent snow on the roofs of their buildings from falling on gas meters, and (3) the damage that can happen to gas meters as a result of falling ice or snow.  *See id*. at p. 15.  In essence, Avista distills Plaintiffs' arguments in favor of amending their Complaint to add a claim for punitive damages as one that unreasonably would amount to a requirement that Avista should have foreseen extreme meteorological events and prevented any consequences from such events, and taken actions to do so in a way that would have exceeded what was understood to be reasonable before that point in time.

The Court has paid careful attention to Avista's objections to Plaintiffs' arguments in favor of bringing a punitive damage claim.  While the parties' respective positions offer no clear-cut resolution to the question now before the Court, Avista's counter-arguments are not altogether persuasive toward avoiding the requested amendment.  Of particular importance is the arguable absence of any meaningful corporate response to the multiple, actual incidents of damaged gas meters at the Warren K. Industrial Park during the winter of 2007/2008, after that

**MEMORANDUM DECISION AND ORDER - 20**

winter ended.  Certainly, had no one from Avista visited the complex the following

spring/summer to follow up on the fact of such a cluster of failures, a strong argument could be

made that Avista's failure to do so was so unreasonable as to constitute a willful indifference to

the safety of others.  Plaintiffs would argue that Avista's *actual* response to the damaging effects

of the 2007/2008 winter was just as (in)effective.  That is, when Avista's Diane Best visited the

Warren K. Industrial Park in the summer of 2008, she was not told (and did not know) which

meters had been damaged by snow the previous winter, testifying at her deposition:

> Q:   Okay.  When you went into the business park in the summer of 2008, were
>        you aware which buildings had been – which buildings' meters had been
>        damaged the previous winter?
>
> A:    No.
>
> Q:   Did you ever – or did Avista ever look into what protection those buildings
>        had during the winter of 2007 and 2008 – which protection, excuse me, those
>        meters had during the winter of 2007 and 2008?
>
> A:    I'm not sure that I understand that question.
>
> Q:   Okay.  When you went in the business park, you just testified that you didn't
>        know which buildings' meters had been damaged the previous winter,
>        correct?
>
> A:    That's correct.
>
> Q:   So did you know what protection those buildings, those buildings' meters
>        had during the winter, the previous winter?
>
> A:    No, if I didn't know which buildings were vulnerable.

*See* Best Dep. at 37:7-25, attached as Ex. B to Anderson Aff. (Docket No. 41, Att. 4).

Without knowing which buildings and which gas meters experienced problems during the

winter prior, it would have been impossible for Ms. Best to know – and, thus, advise Avista – if

another  building's particular snow break offered adequate protection against damage to Avista's

**MEMORANDUM DECISION AND ORDER - 21**

gas meters.  Hence, Plaintiffs can reasonably argue for these purposes that Ms. Best's visit to the

William K. Industrial Park in the summer of 2008 was performed in an information vacuum,

representing nothing more than a cursory drive-by inspection of whether certain identified

buildings had a snow break installed or not – that was it.  No regard was given (or could have

been given since Ms. Best did not know which buildings and which gas meters were involved in

the aforementioned incident reports) as to whether the installed snow breaks actually prevented

the damage resulting from falling snow and ice, or were of a design that had failed the winter

before.  The lack of such information reasonably could be argued to have limited any useful

investigation into the causes of the damage or, reliable ways to avoid similar occurrences and,

even, injury to person and property.  Said another way: If certain buildings actually had snow

protection and still were damaged, what is to prevent those same (or similar) buildings from

being damaged again under similar conditions?  It was simply impossible for Ms. Best, and her

employer Avista, to make a meaningful determination as to whether a gas meter adjacent to

buildings in that particular industrial park was protected from future damage when she had no

idea what type of gas meter protection failed in the first place.

　　　　With all of this in mind, Avista's conduct in response to the known risks preceding

January 2, 2009 was arguably so inadequate as to constitute not only an extreme deviation from

reasonable standards of conduct, but also performed with a level of wantonness and/or gross

negligence so as to support Plaintiffs' arguments for amending their Complaint accordingly.

*See, e.g.*, *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34 (Idaho 2004).

　　　　Having said all this, as became evident during oral argument, a question exists as to

whether (or to what extent) Avista should have done something *different* than simply ensuring

**MEMORANDUM DECISION AND ORDER - 22**

that snow breaks were installed atop the roofs at the William K. Industrial Park's buildings following the winter of 2007/2008.  Even though Plaintiffs argued during the hearing that they have an expert who will testify that Avista's conduct in these respects represents a gross deviation from the appropriate standard of care, such evidence is not a part of the existing record. Notwithstanding the Court's discussion above, without such evidence to consider, the Court cannot contrast Avista's conduct against those alleged standards and, therefore, cannot decide at this time whether Avista performed a bad act with the requisite bad state of mind.  The link, although possible under such a scenario, is too attenuated on this record to meet the full measure of proof that Plaintiffs must put forward to justify an amendment to allow a punitive damages claim.  For this reason, Plaintiffs' Motion for Leave to Amend Complaint to Add Prayer for Punitive Damages Against Avista is denied.[12]

**C.**     **Plaintiffs' Motion for Sanctions Due to Spoliation Against Avista (Docket No. 58)**

As mentioned earlier, the cause of the February 24, 2008 Tracey Road Fire is uncertain. Avista acknowledges that it could have occurred when snow or ice fell off the roof and damaged the gas meter (the "Tracey Road gas meter").  *See supra* (citing *See* Baker Dep. at 33:5-25, attached as Ex. C to Anderson Aff. (Docket No. 41, Att. 6).  Therefore, there is no dispute that the Tracey Road gas meter is tangible evidence relevant to the instant action.  *See, e.g.*, Avista's

---

[12]  If, following the presentation of evidence at trial, the record is such that a renewed motion to amend to conform to the evidence is warranted, Plaintiffs are free to do so, pursuant to the applicable procedural protocols.  However, it is expected that, at that time, there will be a more developed record as to the actual cause of the damaged gas meter leading up to the January 2, 2009 fire at the Building; that is, whether it was due to sliding snow/ice from the Building's roof as Plaintiffs submit or, as Avista contends, a snow cornice forming over the eaves of the rooftops, independent of the existence and functionality of any snow breaks.

**MEMORANDUM DECISION AND ORDER - 23**

Initial Discl., attached as Ex. D to McFarland Decl. (Docket No. 63) (identifying "dispatch and response records" for Tracey Road Fire); Avista's Resp. to Interrog. No. 11, attached as Ex. A to McFarland Decl. (Docket No. 60) (identifying Tracey Road Fire as incident from January 1, 2000 where Avista gas meter was damaged by snow, ice, or other debris falling from roof or other structure).  Consistent with these facts, following the Tracey Road Fire, Avista appropriately secured and maintained the Tracey Road gas meter, originally at its Coeur d'Alene, Idaho offices, and later at its Spokane, Washington offices.  *See generally* Avista's Resp. to Interrog. No. 1, attached as Ex. B to McFarland Decl. (Docket No. 61).

During the course of this litigation, while deposing Avista's William Baker, Plaintiffs' counsel inquired about the whereabouts of the Tracey Road gas meter:

> Q:     Do you know where that gas meter is that was installed at 11889 North Tracey on February 24th, 2008?
>
> A:     I'm going to have to assume it's probably – it's in our evidence locker, as far as I know.  You'd have to ask our claims person.
>
> (Plaintiffs' Counsel):  And Greg, when you get a chance, can you look and see where that gas meter is?
>
> (Avista's Counsel):    I will do that.

**MEMORANDUM DECISION AND ORDER - 24**

*See* Baker Dep. at 34:1-8, attached as Ex. C to Anderson Aff. (Docket No. 41, Att. 6).[13, 14] Still, on or around August 17, 2011 (less than a month after Mr. Baker's deposition), Ms. Donahoo discarded the Tracey Road gas meter due to space constraints when Avista's evidence storage depository transitioned to smaller facility. *See* Donahoo Dep. at 19:13-20:1, attached as Ex. C to McFarland Decl. (Docket No. 62). Though there is no evidence that the Tracey Road gas meter was ever discarded in bad faith to gain some sort of tactical advantage relative Plaintiffs' claims against it here, there is no dispute that it was nonetheless discarded intentionally. *Compare id.* at 37:5-8 *with* Donahoo Dep. at 41:11-17, attached as Ex. 10 to Avista's Counsel's Aff. (Docket No. 65, Att. 1). This backdrop is generally confirmed by Avista in its response to Plaintiffs' discovery request on the subject-matter:

> **INTERROGATORY NO. 1:** If the Avista gas meter or its component parts related to the fire of February 24, 2008 at 11889 Tracey Road in Hayden Idaho are no longer available, please identify when these items were disposed of, who provided permission to dispose of these materials, who was notified of the plans to dispose of these items prior to their disposal, and who participated in and/or oversaw said disposal.
>
> **ANSWER:**
>
> **Following the incident on February 24, 2008, the meter at issue, which was heavily damaged in the fire, was secured and brought to Avista's Coeur d'Alene**

---

[13] During Mr. Baker's deposition, Linda Clifton, Avista's Claim Specialist handling the January 2, 2009 fire, was also in attendance. *See* Baker Dep. at 3, attached as Ex. C to Anderson Aff. (Docket No. 41, Att. 6).

[14] Dawn Donahoo, Avista's Claim Specialist handling the Tracey Road Fire, testified during her deposition that she never received any litigation hold letter, directing her to keep the Tracey Road gas meter. *See* Donahoo Dep. at 17:3-23, attached as Ex. C. to McFarland Decl. (Docket No. 62). Further, Ms. Clifton did not advise Ms. Donahoo to retain the Tracey Road gas meter. *See id.* at 18:14-23; 21:9-11; 37:9-12. In fact, according to Ms. Donahoo, nobody advised her to retain the Tracey Road gas meter after Mr. Baker's deposition. *See id.* at 21:24-22:2.

**MEMORANDUM DECISION AND ORDER - 25**

> offices,w here it was temporarily stored.  It was held at that location until February 29, 2008, at which time it was inspected by Idaho Fire Marshall Mark Aamodt, Northern Lakes Fire Protection District employee Ralph Kramer, and, on behalf of Farmers Insurance, Charles McCall of Unified Investigations & Sciences.  Following that inspection, the meter was transferred to Avista's evidence locker in Spokane, Washington by the Claims Specialist assigned to the incident, Dawn Donahoo.
>
> In August, 2011, Avista's Facilities Department directed Avista's Claims Department to prepare for the need to move its evidence locker to a smaller building on the property.  To facilitate this request, and to accommodate the smaller storage space, on August 17, 2011, Ms. Donahoo disposed of evidence relating to claims that she was assigned to for which the applicable statute of limitations had run.  This included disposal of the meter related to the February 24, 2008 incident at 11889 Tracey Road.

*See* Avista's Resp. to Interrog. No. 1, attached as Ex. B to McFarland Decl. (Docket No. 61) (emphasis in original).

Plaintiffs now argue that, due to the Tracey Road gas meter's intentional destruction (after Avista's own acknowledgment of its relevance and after receiving a request from Plaintiffs for its preservation), entitles them to an affirmative designation that the Tracey Road Fire was caused by snow falling on the gas meter.  *See* Pls.' Mem. in Supp. of Mot. for Sanctions, pp. 6 & 9-10 (Docket No. 58, Att. 1) ("Avista's willful destruction of the Tracey Road Meter after the litigation commenced, and before the Evans' or their experts had the opportunity to examine it, requires a sanction more than simply an adverse jury inference . . . . [but an order establishing that] . . . .  The Tracey Road Fire occurred as a result of snow falling on the Avista meter and that Avista had first-hand knowledge of this fact.").

Avista opposes any sanctions resulting from its inadvertent disposal of the Tracey Road gas meter, arguing that (1) the reason for disposing it was innocuous – to create space in its storage facility, not due to a concern for its possible evidentiary implications; (2) it previously

**MEMORANDUM DECISION AND ORDER - 26**

made the Tracey Road gas meter available for inspection to, *inter alia*, Farmers Insurance (which, by virtue of its subrogated interest, is a putative Plaintiff in these proceedings); (3) it fully cooperated with Plaintiffs on the informal exchange of information relating to the Tracey Road Fire; (4) Plaintiffs are not prejudiced by the Tracey Road gas meter's destruction because "from an operational standpoint," Avista assumed the Tracey Road Fire was the product of snow-load damage, rendering additional evidence regarding the Tracey Road gas meter both cumulative and unnecessary; and (5) the Idaho State Fire Marshal's and Northern Lakes Fire Protection District's inspection reports relating to the Tracey Road gas meter are (and have always been) available to Plaintiffs for their review. *See* Avista's Opp. to Pls' Mot. for Sanctions, pp. 10-13 (Docket No. 65).

Federal trial courts have the inherent authority to make appropriate evidentiary rulings and to levy sanctions in response to the destruction or spoliation of relevant evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Sanctions for spoliation include dismissal of claims, exclusion of evidence, and adverse jury instructions in which the jury is informed that it may presume that the destroyed evidence, if produced, would have been adverse to the party that destroyed or failed to preserve it. *See Unigard Security Ins. Co. v. Lakewood*, 982 F.2d 363, 368-70 (9th cir. 1992). A finding of bad faith is not required before spoliation sanctions may be imposed – sanctions may be imposed on the basis of simple notice of potential relevance to the litigation. *See Glover*, 6 F.3d at 1329. Factors to be considered when determining the severity of the sanction to impose against a party for failure to preserve evidence include: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice. *See Miller v. Four Winds Intern. Corp.*, 827 F. Supp. 2d 1175, 1181 (D. Idaho 2011) (citing *Swofford v.*

**MEMORANDUM DECISION AND ORDER - 27**

*Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009)).  Courts generally will not impose a

significant sanction for spoliation, unless there is a showing that the spoliation was willful and

the loss of evidence prejudiced the opposing party.  *See Miller*, 827 F. Supp. 2d at 1181 (citing

*Aiello v. Kroger Co.*, 2010 WL 3522259 (D. Nev. 2010); *Byrnie v. Town of Cromwell, Bd. of*

*Educ.*, 243 F.3d 93, 108 (2nd Cir. 2001)).  "The loss or destruction of evidence qualifies as willful

spoliation of the party 'has some notice that the documents were potentially relevant to the

litigation' before they were lost."  *Aiello*, 2010 WL 3522259 at *3 (quoting *Leon v. IDX Systems*

*Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

   Here, it is certain that, like the other events preceding the January 2, 2009 fire at the

Building (*see supra*), the cause of the Tracey Road Fire is not only relevant to this case, but

potentially integral to Plaintiffs' theory of liability.  Despite various hypotheses concerning the

genesis of the Tracey Road Fire (from accidental to arson (*see* Avista's Opp. to Pls.' Mot. for

Sanctions, pp. 3-4 (Docket No. 65)), the fact remains that it is entirely *possible* that it was caused

by snow or ice falling off of the building's roof, damaging the gas meter, and setting in motion a

conflagration similar to one that destroyed the Building.  However, due to the destruction of the

Tracey Road gas meter, Plaintiffs are hamstrung – through no fault of their own – in fleshing

such details out in their favor.  Owing to what appears to be an innocent but serious internal

miscommunication, Avista itself still created this bind in not preserving such evidence, even

after it was mentioned at Mr. Baker's deposition and thereafter discussed in correspondence

between Plaintiffs' and Avista's counsel (*see* 8/15/11 email, attached as Ex. 9 to Avista's

Counsel's Aff. (Docket No. 65, Att. 1)).  Sanctions are therefore warranted against Avista to

address Plaintiffs' prejudice.

**MEMORANDUM DECISION AND ORDER - 28**

Because there is no Tracey Road gas meter for Plaintiffs and their experts to inspect, it matters not that other entities may have already inspected it following the Tracey Road Fire. That is, regardless of any previous inspections (including Farmers Insurance's), Plaintiffs are simply not able to present to the jury their own interpretation of what took place leading up to the Tracey Road Fire. Thus, not only is no sanction inappropriate, but a rebuttable presumption that the Tracey Road Fire was caused by a snow/ice-damaged gas meter is also inappropriate because it would leave Avista free to tell its own story, unchecked by the evidence it failed to preserve. In the Court's mind, only a non-rebuttable inference that the Tracey Road Fire was caused by snow falling on the Tracey Road gas meter addresses this unique situation.[15] To this extent, Plaintiffs' Motion for Sanctions Due to Spoliation Against Avista is granted.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1.      Third-Party Defendant Mid-Mountain Land & Timber, Inc.'s Motion for Summary Judgment (Docket No. 41) is GRANTED;

2.      Defendant Avista Corporation's Motion for Partial Summary Judgment Re: Plaintiffs' Claimed Damages (Docket No. 71) is DENIED; however, Avista is permitted to depose Ryan Evans.

3.      Plaintiffs' Motion for Leave to Amend Complaint to Add Prayer for Punitive Damages Against Defendant Avista Corporation (Docket No. 53) is DENIED; and

---

[15] Perhaps such a ruling is of little consequence given Avista's contention that it "has conceded that, regardless of the actual cause, it operated under the assumption that the Tracey Road Fire was a result of snow falling from the roof of the building and damaging the meter." *See* Avista's Opp. to Pls.' Mot. for Sanctions, pp. 2 & 12 (Docket No. 65). If not, Avista's arguments in these respects are overstated.

**MEMORANDUM DECISION AND ORDER - 29**

4.      Plaintiffs' Motion for Sanctions Due to Spoliation Against Defendant Avista

Corporation (Docket No. 58) is GRANTED.



DATED:  **September 19, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 30**